**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| YOLANDA HUGHES,<br>Plaintiff<br>v.<br>DENIS MCDONOUGH, et al.,<br>Defendants | Case No.: 3:26-cv-00035-MMD-CSD<br>**Report & Recommendation of U.S. Magistrate Judge**<br>Re: ECF Nos. 1, 1-1 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff has filed an application to proceed in forma pauperis (IFP) (ECF No. 1) and pro se complaint (ECF No. 1-1).

## I. IFP APPLICATION

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915 applies to all actions filed IFP, not just prisoner actions).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP].

The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

A review of the application to proceed IFP reveals Plaintiff cannot pay the filing fee; therefore, the IFP application should be granted.

## II. SCREENING

### A. Standard

"[T]he court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. As such, when reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

Plaintiff's complaint names the Veterans Administration (VA) and VA Southern Nevada Healthcare System, as well as current or former VA employees in both southern and northern Nevada: Gloria Bailey, Cathy Amaya, Ernest Jenkins, Amanda Forrester, Amanda Mills, Martin Littlejohn, Lisa Hamilton, Maryanne Shade, Leland Pate, Jennie Betts, Justin Dunaway, Jill Gonzales, Alexandra Riggs, Catherine Ryan, and Eric Gerken.

Plaintiff references the Americans with Disabilities Act (ADA), the Fourteenth Amendment, and Title VII of the Civil Rights Act of 1964. (ECF No. 1-1 at 3.) Her complaint contains a variety of allegations about her employment with the VA in both northern and southern Nevada.

Plaintiff appears to allege that she was an employee of the VA in southern Nevada, and applied to transfer to the VA in northern Nevada, after she was harassed in southern Nevada. She alleges that her supervisor in the call center was Ernest Jenkins, and he was manipulating her statistics, and then moved into Plaintiff's apartment building, and tried to embarrass Plaintiff and make an example of her by insulting her in group meetings. For example, he would say, "you should leave, and you should go back where you came from." She avers that he used his employees to monitor Plaintiff's computer, and he would send "ghost emails" to Plaintiff's computer, and take pictures of her at work. She goes on to allege that Jenkins used his employees to follow her and park outside her home with listening devices. She contends that Jenkins had employees break into her car twice, and circulated her picture to people to report to him if she was spotted in public. She claims that he simulated a "drive by" to intimidate Plaintiff.

Plaintiff claims that she was hired to work at the VA in northern Nevada by Amanda Forrester. She claims Forrester "hired her in order to fire her," and when she moved to northern Nevada, the harassment escalated. She was hired to be a scheduler for the social work clinic, but her training was at another location and she was required to work at the other location. She asserts that Forrester threatened to call the police on her and accused her of stealing equipment. She alleges that Forrester had another employee, Raymond, stalk Plaintiff and her son. When Plaintiff called to report this to the police, she avers that Forrester is an ex-cop and called the police to stop the investigation. Plaintiff contends that Forrester forced Plaintiff to work in an

unsafe location. She claims that Forrester had access to her computer, and eventually had the phones removed from Plaintiff's desk.

Plaintiff alleges that Amanda Mills accused Plaintiff of combining breaks and lunches. She asserts that on June 20, 2026, Martin Littlejohn gave her a proposed suspension charging her with being "AWOL" on various dates, which Plaintiff claims were fabricated.

Plaintiff avers that she reported abuse from staff to Lisa Hamilton, but Hamilton only suggested she call the police. She also says that Hamilton insisted she attend a meeting after she had requested and was denied leave time.

She claims that Maryanne Shade was on every email from Hamilton and Forrester, and Shade made false statements during a fact finding when she said Plaintiff was belligerent toward her and walked out of her office and slammed the door. Plaintiff contends she has never been in Shade's office.

Plaintiff avers that she pulled up a leave and earning statement but it did not print to the office where she was working, but went to the printer where the manager was working. She claims that Forrester was monitoring her computer and diverted Plaintiff's pay statement. She claims that she emailed Leland Pate when her computer displayed "not private," but Pate did nothing about it, and her Social Security number has been exposed.

Plaintiff goes on to assert that she emailed Jennie Betts that she had been denied access to the VPN and her personal information had been stolen, and her computer displayed "not private," but Betts did not respond.

She claims that Manager Justin Dunaway said to sign into "Finesse," and she hung up on him, but this did not happen. She also maintains that IT told her that they did not use Finesse.

She avers that Jill Gonzalez threatened to call the police on Plaintiff for using her computer on an off day, when Plaintiff had her badge and was authorized to be in the office. She claims Gonzalez made false statements that Plaintiff was in the office cursing, and that she left her desk six times.

Plaintiff then claims that Alexandra Riggs was feeding Plaintiff false information to schedule and cancel appointments, and accused her of doing things she did not do.

Plaintiff states that Catherine Ryan participated with Forrester in the harassment.

Finally, Plaintiff alleges that she had a meeting with Eric Gerken, a union representative, in the beginning of December 2022, and said that Forrester had hired her to fire her. Gerken took notes but did not give Plaintiff a copy and did nothing.

She claims that she was forced off the job on August 4, 2023.

Plaintiff also includes allegations that her computers and phones were hacked, and her personal files were stolen.

She states that she filed an Equal Employment Opportunity Commission (EEOC) complaint with her union representative, but he never filed the complaint.

**C. Analysis**

First, Plaintiff's complaint references the ADA. "Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id.*

Given that Plaintiff's complaint is about her employment, it appears she is trying to state a claim for employment discrimination under the ADA. If this is the case, Plaintiff must allege

facts showing that: (1) she is disabled within the meaning of the ADA; (2) she is a "qualified individual" capable of performing the essential functions of the job at issue, with or without reasonable accommodation; and (3) she was unlawfully discriminated against because of her disability. *Smith v. Clark County School Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999)).

Plaintiff's complaint contains no allegations that can be construed as asserting she has any disability; that she was qualified and capable of performing the essential functions of her job, with or without accommodation; or that she was discriminated against because of her disability. Therefore, Plaintiff's ADA claim should be dismissed. In an abundance of caution, Plaintiff should be given leave to amend to attempt to assert a claim under the ADA.

Next, Plaintiff's complaint references Title VII. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, prohibits an employer from discriminating against a person as to the terms, conditions or privileges of employment because of that person's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Harassment is unwelcome conduct *based on* race, color, religion, sex, or national origin, and is unlawful where enduring the conduct becomes a condition of continued employment or is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile or abusive. Plaintiff's allegations do not contend Plaintiff was discriminated against and harassed such that she was subjected to a hostile work environment *on the basis* of her race, color, religion, sex or national origin, so as to invoke Title VII's protections. Therefore, her claim under Title VII should be

dismissed. Again, in an abundance of caution, Plaintiff should be given leave to amend to attempt to assert a claim under Title VII.[1]

Finally, Plaintiff cites the Fourteenth Amendment, which could be the source of a variety of constitutional claims, including alleged violations of procedural due process, substantive due process, as well as the Equal Protection Clause. Plaintiff's complaint does not state what type of Fourteenth Amendment claim she seeks to assert, and her allegations cannot be construed to give rise to any claim under the Fourteenth Amendment. Therefore, Plaintiff's Fourteenth Amendment claim should be dismissed; however, she should be given leave to attempt to assert such a claim.

## III. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **GRANTING** Plaintiff's IFP application (ECF No. 1);

(2) Kindly directing the Clerk to **FILE** the complaint (ECF No. 1-1); and

(3) **DISMISSING** the complaint **WITH LEAVE TO AMEND**.

(4) Plaintiff should be given 30 days from the date of any order adopting this Report and Recommendation to file an amended complaint correcting the deficiencies noted above. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the

[1] Title VII requires that a charge of discrimination be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). That period is extended to 300 days if the plaintiff "initially instituted proceedings" with a State or local agency with authority to enforce anti-discrimination laws. *Id*. Plaintiff's complaint appears to allege that no charge of discrimination was ever actually filed, which may ultimately be fatal to any Title VII claim.

court. Plaintiff shall clearly title the amended pleading as "AMENDED COMPLAINT." Finally, Plaintiff should be cautioned that if she fails to timely file an amended complaint, the action may be dismissed.

Plaintiff should be aware of the following:

1. That she may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge. Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: July 10, 2026

Craig S. Denney
United States Magistrate Judge